**SIGNED this 21st day of October, 2008.**

**FRANK R. MONROE**
**UNITED STATES BANKRUPTCY JUDGE**

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| AUSTIN TEMPORARY SERVICES, INC. | ) CASE NO. 07-11888-FM |
| DEBTOR | ) (Chapter 7) |

## MEMORANDUM OPINION

The Court held a hearing on the Application of the Chapter 7 Trustee to Retain and Employ the Law Office of James P. Grissom and Magallanes & Hinojosa, P.C. (collectively "the Attorneys"), for a special purpose ("Application"). The special purpose set out in the Application was, "to represent the Trustee by investigating and pursuing, if warranted, a legal malpractice action against J. Albert Kroemer and the Law Firm of Canty & Hanger". The Application also alleged that the Attorneys had no interest adverse to the Estate and requested that the Attorneys be employed on a

1

contingent fee basis of 50% of any gross recovery plus reimbursement of reasonable expenses. Both James P. Grissom, on his own behalf, and Gilberto Hinojosa, on behalf of the Firm of Magallanes & Hinojosa, P.C., filed affidavits stating that they did not hold or represent any interest adverse to the Estate on the matters on which they sought to be employed and that they were disinterested persons as that term is defined in 11 U.S.C. §101(14). The affidavits, however, disclosed that Mr. Grissom had represented Felix Alberto de la Fuente against Austin Temporary Services, Inc. (the Debtor) in Cause No. 1999-10-4506-G in Cameron County, Texas in an attempt to collect the unpaid judgment that issued in such cause and that Mr. Hinojosa was the attorney for Felix Alberto de la Fuente in such matter and obtained the judgment against the Debtor.

The Application to Employ was filed April 18, 2008. On May 9, 2008, an Objection to the Application was filed by J. Albert Kroemer. Hearings were set upon such Application but continued several times at the request of the parties. A hearing was finally held on September 23, 2008. At that time Canty Hanger, LLP, filed a formal written Joinder in the Objection to the Application that had been filed by J. Albert Kroemer.

### Facts

Gilberto Hinojosa, one of the Attorneys seeking to be employed by the Estate, obtained a judgment on behalf of Felix Alberto de la

Fuente dba FA Construction, a copy of which is attached to the Proof of Claim filed in this case by de la Fuente on September 22, 2008. Such claim is in the total sum of $567,774.15.

Debtor listed total liquidated liabilities in its Schedules of $90,950.00 in addition to the amount owed de la Fuente, which was listed as unknown in the Schedules. Of that amount, $45,000.00 is listed as being owed to Irene Allen who is the principal shareholder of the Debtor and had served as President of the Debtor.

Accordingly, de la Fuente's judgment claim against the Debtor totals approximately 92-1/2% of all non-insider claims of this Estate.

After entry of the judgment in the state court, James P. Grissom was employed by de la Fuente to work with Gilberto Hinojosa to attempt to collect the judgment. One of the remedies employed was to obtain the appointment of a state court receiver for the Debtor. The state court appointed one Mr. Ochoa-Cronfel in that capacity in March 2007.

On October 11, 2007, the Debtor filed its Voluntary Petition under Chapter 7 in this Court. Ronald Ingalls was appointed as the Chapter 7 Trustee. The Debtor scheduled only three assets, all being contingent and unliquidated claims against third parties. One of those claims was a potential malpractice claim against Prager, Meztger, Kroemer with a notation on the schedules, "Debtor

does not believe malpractice occurred." The value of that potential malpractice claim was scheduled at zero.

J. Albert Kroemer had represented the Debtor in the lawsuit which Magallanes & Hinojosa, P.C. had pursued against the Debtor and from which the judgment arose. However, Mr. Kroemer had been permitted by the court in that matter to withdraw as counsel for the Debtor in 2003. The case was not tried in the 404th Judicial District Court of Cameron County, Texas until August 2005. Therefore, J. Albert Kroemer had been dismissed and had not been acting as an attorney for the Defendant/Debtor in that cause for over two years when the case was tried and the Debtor lost.

That is the context within which the malpractice claim that the Trustee seeks to employ the Attorneys to pursue allegedly arose. Let us now remember that the Application to Retain the Attorneys makes the specific allegation that these Attorneys need to be employed, "to represent the Trustee **by investigating and pursuing, if warranted**, a legal malpractice action against J. Albert Kroemer and the Law Firm of Canty & Hanger." And, as noted above, that Application was filed with this Court on April 18, 2008. HOWEVER, the Attorneys had already filed the lawsuit under Cause No. 2008-03-1432-G in the 404th Judicial District Court of Cameron County, Texas. That action was actually filed March 6, 2008, a full six weeks prior to the filing of the Application which sought to employ the Attorneys to investigate a legal malpractice action and, if warranted, to file same. The Application,

4

therefore, is factually misleading.   ADDITIONALLY, the Petition filed by the Attorneys was filed on behalf of Irene Allen purportedly acting in her individual capacity as well as on behalf of the Debtor Austin Temporary Services, Inc.   An examination of the Plaintiff's Original Petition filed by the Attorneys does not reveal any factual or legal basis upon which Irene Allen could file such lawsuit on behalf of Austin Temporary Services, Inc.   After all, the Debtor was in bankruptcy.   In fact, the proper representative of the Debtor to bring the lawsuit is the Chapter 7 Trustee, Ronald Ingalls.   Irene Allen was the shareholder and the former President of the Debtor and was clothed with absolutely no authority to do anything on behalf of the Debtor, much less proceed in an attempt to collect an alleged malpractice claim against the Debtor's prior counsel.

Examination of the Plaintiff's Original Petition reveals other salient facts.   The Attorneys sued J. Albert Kroemer alleging that he had abandoned the representation of Plaintiff without notice. That is obviously false since it is clear that Mr. Kroemer had been allowed to withdraw from such representation by the Court some two years prior to the trial.   Additionally, the Attorneys have sued Canty & Hanger, LLP, a law firm with which J. Albert Kroemer was not even associated at the time of his representation of the Debtor.   Even so, the Attorneys allege to the contrary.   Such is obviously false.

So, upon what authority were the Attorneys acting when they

filed the state court suit in March 2008?  Upon questioning by the Court at the hearing, Mr. Grissom admitted that it was the state court receiver that had given him authorization to file the lawsuit. In response to Mr. Grissom, the Court stated, "You don't seem to understand that the receiver has absolutely no authority to authorize anything once the bankruptcy's filed."  Mr. Grissom responded, "That's true, your honor."  The Court then responded to Mr. Grissom, "And, it was filed on behalf of Irene Allen, who had no authority to act on behalf of the Debtor."  Mr. Grissom tellingly responds, "I understand that, your honor.  The statute of limitations was running and it was going to expire...".  The Court then asked Mr. Grissom, "So, did you have any conversations at all with Mr. Ingalls?"  Mr. Grissom first answers, "Yes, I did."  Upon further questioning, Mr. Grissom states, "I don't have anything in writing.  I don't have any personal recollection of that, your honor."

Attached to the Brief in Support of the Trustee's Application, which Brief was filed after the hearing, is an affidavit executed by the Trustee two days after the hearing in which he states that sometime in late February 2008 he told Mr. Grissom to go ahead and file the lawsuit to preserve the claim while we were awaiting the decision of the Application for Employment.  Obviously in February 2008 no Application had been filed and none was filed until April 18, 2008.

### The Law

Section 327 of the Bankruptcy Code allows employment by the trustee of professional persons.  Subsection (e) of that Section states that, "The trustee, with the Court's approval, may employ, for a special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which the attorney is to be employed."

In circumstances similar to the case at bar, other courts have considered whether employment of a creditor's counsel by the trustee would be appropriate under §327(a).  One court stated:

Section 327(a) serves to insure that 'the undivided loyalty and exclusive allegiance required of a fiduciary to an estate in bankruptcy is not compromised or eroded'.

*In re Prudent Holding Corp.,* 153 B.R. 629, 631 (Bankr. E.D.N.Y. 1993).

Section 327(c) states that a "person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor ... " unless there is an actual conflict of interest.  11 U.S.C. §327(c)

The courts in the *Prudent Holding Corp.* case and in the cases cited therein approved the trustee's employment of a creditor's counsel by applying Sections 327(a) and (c) "by analogy" to Section 327(e).  In reasoning by analogy the court comes to the conclusion

that §327(e) authorizes the trustee to appoint counsel for creditors as special counsel. This Court does not believe that reasoning by analogy is necessary.

The better reasoning is that Subsection (c) alone authorizes such action in and of itself. Subsection (e) is simply an exemption from the general rule that the debtor's counsel cannot represent the trustee. Subsection (c) makes it clear that a creditor's counsel can represent the trustee [unless there is an actual conflict of interest], if it is in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which the attorney is to be employed.

1) Do the Attorneys here have a direct conflict of interest?

The judgment obtained by Mr. Hinojosa on behalf of de la Fuente was obtained on a contingent fee basis. And here they seek further employment on a 50% contingency. What is the effect of that? Let us presume that the Attorneys are authorized to pursue the lawsuit against Mr. Kroemer and Canty & Hanger, LLP. Let us also presume they are successful and obtain a judgment in the full amount of the judgment that they have obtained on behalf of de la Fuente against the Debtor. And, let's say that that amount, with interest, would be $600,000.00. $300,000.00 of that would then go to Grissom and Hinojosa as attorney's fees. 92-1/2% of the remaining $300,000.00 or $277,500.00 would be payable to de la Fuente. However, the contingent fee arrangement upon which de la

Fuente hired Hinojosa (and perhaps Grissom as well to collect the judgment) would most likely be an additional 40-50 percent or another $125,000.00 or so. Under that scenario, the Attorneys would be paid $425,000.00 and the client would ultimately get only a small percentage, maybe as little as 25%, of the original judgment amount. Under that scenario, these attorneys most likely do not have a conflict of interest per se, but it is hard to say they are disinterested and it clearly does not look kosher to the casual observer.

2) Would not Gilberto Hinojosa have to be a fact witness in the malpractice case?

Most likely. One would presume that he is one of the primary persons who witnessed the alleged acts of malpractice that Mr. Kroemer supposedly committed. That appears to be problematic.

3) Are there other factual bases which establish a conflict of interest?

Yes. After the hearing, Irene Allen filed a formal "Advice to the Court". In it Irene Allen advises that

a. The Attorneys filed the state court lawsuit against Kroemer and Canty & Hanger six weeks before the Application to Employ was filed by the Trustee;

b. The Attorneys filed the lawsuit on behalf of Irene Allen as an individual and in some unknown capacity in which she was acting on behalf of the Debtor;

9

c.  The Attorneys, on behalf of Irene Allen individually, have answered at least four separate discovery responses;

d.  The Attorneys, on behalf of Austin Temporary Services, Inc., the Debtor, have answered at least four separate discovery responses in the Cameron County lawsuit;

e.  None of the discovery responses were verified by Irene Allen;

f.  Irene Allen never employed the Attorneys to represent her individually and never authorized the Attorneys to act either on her behalf or that of the Debtor;

g.  Irene Allen does not believe there is any basis for the malpractice claim against Kroemer and Canty & Hanger; and

h.  Irene Allen intends to file a grievance with the State Bar of Texas against the Attorneys for purporting to act on her behalf without any authorization at all.

Irene Allen is the 100% shareholder of the Debtor.  As such, she has different interests in either pursuing or not pursing the malpractice action.  Additionally, she would have different interests from the Debtor in either settling or not settling, or making the decision to go to trial or not go to trial, than the Debtor.

It appears to the Court that the Attorneys, by their actions, have created a conflict of interest that would bar them from representing either Irene Allen or the Debtor.

4)  Even if there is no conflict of interest, should the Attorneys be employed?

Considering the totality of the circumstances within which the Application to Employ was filed, the answer is no.

First, it is far from clear whether the Attorneys had any authorization from the Chapter 7 Trustee to file the Cameron County malpractice suit against Kroemer and Canty & Hanger.

Second, the Application to Employ recites that the purpose of the employment is to investigate and, if warranted, file the action.  Although the Chapter 7 Trustee filed the Application, it was no doubt prepared by the Attorneys.  This assertion in the Application is, then, an intentional misrepresentation to the Court.

Third, the Attorneys ignored the professional rules of conduct that apply to them in filing the Cameron County lawsuit on behalf of Irene Allen with any authorization from Irene Allen to do so. Additionally, the Petition which the Attorneys prepared alleged that Irene Allen was acting on behalf of the Debtor corporation. This, too, was false.

Fourth, the Attorneys should have known that the proper party in whose name to bring the action was the Chapter 7 Trustee on behalf of the Debtor.

Fifth, the Attorneys represented to this Court at the hearing that they obtained the approval to file the state court action from

11

the state court receiver even though they acknowledged he had no authority to authorize the same.

Sixth, the malpractice claim itself is of doubtful merit. Why?

1. Mr. Kroemer had been allowed by the Court acting in the prior matter to withdraw some two years prior to the time it was actually tried; and

2. The Attorneys sued Canty & Hanger LLP even though Mr. Kroemer was not associated with Canty & Hanger LLP in any manner, shape or form during the time he represented the Debtor in the state court lawsuit.

### Conclusion

It is not in the best interest of this Estate that the Trustee employ the Attorneys as the Court doubts they are qualified for all of the reasons set forth above. Plus, an actual conflict of interest was created by their attempt to represent both the Debtor and Irene Allen.

###